## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | ) | **Bankruptcy No. 16-21169-CMB** |
|  | ) |  |
| **WAGLE, LLC** | ) | **Chapter 11** |
| **dba Ed & Mark's Locksmith,** | ) |  |
|  | ) | **Related to Doc. Nos. 91 & 96** |
| **Debtor.** | ) |  |
|  | ) |  |
|  | ) |  |

### MEMORANDUM OPINION

This matter came before the Court for an evidentiary hearing on the confirmation of the amended chapter 11 plan of reorganization, dated March 20, 2017 (the "Amended Plan")[1] filed by Wagle, LLC d/b/a Ed & Mark's Locksmith (the "Debtor") and the objection to confirmation of the Amended Plan filed by Lynn Stone McLaughlin ("McLaughlin").[2]  Having reviewed the record, testimony, evidence and applicable law, this Court shall deny, without prejudice, confirmation of the Amended Plan.

### Background

The Debtor in this case is a locksmith operating as a Pennsylvania limited liability corporation.  On or about March 30, 2016, the Debtor commenced this bankruptcy proceeding by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code").  The Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).  Pursuant to the Debtor's disclosure statement, the event that precipitated the Debtor's

---

[1] Doc. No. 91.
[2] Doc. No. 96.

bankruptcy filing was an impending balloon payment on the Debtor's loans held by Branch

Banking and Trust Company ("BB&T").[3]

On or about March 20, 2017, the Debtor filed the Amended Plan pursuant to 11 U.S.C.

§ 1121(e).  The Amended Plan provides for treatment of classes and interests as follows:

> Class 1 – Administrative claims
>
> Class 2 – BB&T secured claims[4]
>
> Class 3 – Priority tax claims
>
> Class 4 – Unsecured claims[5]
>
> Class 5 – Member interests of William and Patricia Wagle (the "Owners").

Funding of the Amended Plan is to be provided from continued business operations, as

well as a contribution of $8,000.00 from the Owners, in return for maintaining their ownership

interest in the reorganized debtor.  The source of these funds is identified within the Amended Plan

as a gift to the Owners from a family member.[6]

---

[3] *See* Disclosure Statement, Doc. No. 93, at 2.

[4] The Debtor lists two (2) secured loans in favor of BB&T, which are secured by the real and personal assets of the Debtor.  The Debtor proposes the following treatment under the Amended Plan:
> The Class 2 secured claims of BB&T will be paid pursuant to the terms agreed upon by the parties.  The amortization of the first note of $440,138.45 over a term of 20 years at 5.5% for a payment of $3,028.00 payable for 60 months, with a balloon payment due in 5 years.  The amortization of the second note compromised to $66,000.00 over the same 20 year term at 5.5% for a payment of $454.00 for 60 months, with a balloon due in 5 years.  The unsecured balance of the second note in the amount of $205,151.31 will be treated in the unsecured Class 4.  The Debtor acknowledges as part of this agreement that it shall timely pay real estate taxes and maintain required property insurance, with BB&T as loss payee.

*See* Amended Plan, at 2-3.

[5] Class 4 is slated to receive a dividend of 2%.

[6] *See* Amended Plan, Doc. No. 91, at 3.

2

On or about April 18, 2017, McLaughlin filed an objection to confirmation of the Amended Plan (the "McLaughlin Objection"), stating that the Amended Plan violates the absolute priority rule under 11 U.S.C. § 1129(b)(2) and is therefore not confirmable.[7]

Following an evidentiary hearing, this Court directed the parties to submit briefs as to whether the proposed cash infusion of $8,000.00 by the Owners, in exchange for their retained equity in the reorganized debtor, satisfies the new value exception to the absolute priority rule codified in 11 U.S.C. § 1129(b)(2)(B)(ii).  Upon review of the applicable law, the Court resolves this matter on undisputed facts.  After reviewing the briefs filed by the Debtor and McLaughlin, the matter is now ripe for decision.

## Discussion

In order for a chapter 11 plan of reorganization to be confirmed, the plan must meet the requirements of 11 U.S.C. § 1129(a).  Since the Amended Plan was not accepted by every impaired class of claims, it does not satisfy the requirements of § 1129(a)(8).  As such, it may only be confirmed pursuant to the cram-down provisions of § 1129(b), which, in turn, triggers analysis of the absolute priority rule set forth in 11 U.S.C. § 1129(b)(2)(B)(ii).  The absolute priority rule requires payment in full of a dissenting class of unsecured creditors before any junior class is permitted to retain any property, including ownership in the reorganized debtor.[8]

---

[7] *See* McLaughlin Objection, ¶¶ 20-23.  Although other objections were raised in the McLaughlin Objection, the parties focused their briefs on the application of the absolute priority rule codified in 11 U.S.C. § 1129(b)(2).  As the Court finds that the Amended Plan cannot be confirmed on that basis, the Court does not address the other objections raised in the McLaughlin Objection.

[8] *See In re Haskell Dawes, Inc.,* 199 B.R. 867, 871 (Bankr.E.D.Pa. 1996).

In this case, the Owners, as equity holders, are in a class junior to the dissenting unsecured creditor, McLaughlin. McLaughlin falls under class 4 of unsecured creditors, which, pursuant to the Amended Plan, is only receiving a distribution of 2%. Typically, application of the absolute priority rule would bar the Owners from retaining their ownership interest in the reorganized debtor, however, the Owners are seeking to utilize the new value exception to overcome the absolute priority rule. This exception permits existing equity holders to buy back their ownership interests by making a new capital contribution to the debtor that meets the applicable criteria.[9]

Under the terms of the Amended Plan, the Owners are to retain 100% ownership of the reorganized debtor, in exchange for a contribution of $8,000 of new capital.[10] As the proponent of the Amended Plan, the "[D]ebtor bears the burden of showing that this retained interest is 'reasonably equivalent' to the amount of [the Owners'] contribution."[11] McLaughlin claims that the Debtor has <u>not</u> met this burden. This Court agrees.

While the Debtor offered testimony at the confirmation hearing as to the value of the Debtor's real property, the Debtor did not present any evidence as to the value of the locksmith business, the Debtor did not offer any expert testimony as to valuation, nor did the Debtor expose the business to a market valuation. This Court has no basis to determine the "going concern" value of the business. As the Supreme Court stated in *203 N. Lasalle*, "[a]ssuming a new value corollary, plans providing junior interest holders with exclusive opportunities free from competition and without benefit of market valuation fall within § 1129(b)(2)(B)(ii)'s prohibition."[12]

---

[9] *Id.*

[10] *See* Amended Plan, at 3.

[11] *See In re Haskell Dawes, Inc.*, 199 B.R at 877.

[12] *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. Lasalle St. P'ship*, 526 U.S. 434, 437 (1999).

In its brief, the Debtor asserts that the agreement of the secured lender to voluntarily cramdown an unsecured portion of its claim is the best evidence that the equity interest of the principals has a negative value.[13] This Court disagrees.

Instead, this Court relies on the four-step test for the new value exception delineated in *In re Haskell Dawes, Inc.*, that is, equity holders seeking to use the new value exception to the absolute priority rule to obtain plan confirmation must provide a capital contribution that is: (1) in the form of money or money's worth; (2) necessary to the reorganization; (3) reasonably equivalent to the value of the interest being retained; and (4) up front and substantial.[14] The burden of proving all of these requirements is on the plan proponent.[15] "A 'rigorous showing' as to these requirements is necessary in order to ensure that a debtor's equity holders do not eviscerate the absolute priority rule by means of a contrived infusion."[16]

In this case, the first prong of the test is met as the $8,000.00 contribution by the Owners is in the form of money or money's worth.  As to the second prong, however, it is unclear as to

---

[13] *See* Debtor's Brief in Support of Confirmation, Doc. No. 119.

[14] *In re Haskell Dawes, Inc.,* 199 B.R. at 872.

[15] *Id.*

[16] *See In re Tallahassee Associates, L.P.,* 132 B.R. 712, 718 (Bankr. W.D.Pa. 1991) (requiring a proposed cash infusion to be necessary for an effective reorganization and reasonably equivalent to the interest retained).

whether the $8,000.00 contribution is necessary to the Debtor's reorganization.[17]  Nonetheless, the

Debtor clearly fails to meet its burden under the third and fourth prongs of the test.

The third prong of the test is whether the capital contribution is reasonably equivalent to

the interest being retained.  Reasonable equivalence is required by § 1129(b)(2)(B)(ii).  If a plan

purports to give the debtor's prepetition owners the equity interests in the reorganized debtor at a

bargain price, the prepetition owners will be receiving something "on account" of their prepetition

ownership.  Thus, the plan would violate the absolute priority rule.[18]  In evaluating whether the

capital contribution is reasonably equivalent, the court in *In re Haskell Dawes, Inc.* stated,

> [w]hatever method of valuation is employed, it is clear that the reorganized
> enterprise must be valued on a 'going concern' basis rather than as if the assets
> were to be liquidated.  Otherwise, the creditors would be stuck with liquidation
> valuations while the reorganized premium -- the 'upside' to be gained from a
> successful reorganization -- would go entirely to the debtor's equityholders.[19]

In this case, this Court finds that the $8,000.00 has no nexus to the value of the interest

being retained and is therefore not reasonably equivalent to the interest being retained.  The Debtor

presented no evidence for the Court to evaluate the "going concern" of the Debtor's locksmith

business, nor did the Debtor expose the business to the marketplace.  Therefore, the Debtor did not

---

[17] Most courts seem to agree that the necessary requirement is met if: (i) the contribution will be used to fund repairs
or improvements to the debtor's property that are necessary to its reorganization; or (ii) the contribution is needed to
enable the debtor to make payments due under the plan of reorganization and continue operating.  *See In re Arc Water
Treatment,* No. 96-31144DWS, 1998 WL 732875, at *4 (Bankr. E.D. Pa. Oct. 15, 1998).  However, where there is no
evidence of the foregoing and the only apparent reason for the contribution is to make a nominal payment to unsecured
creditors, courts have held that the necessity requirement is not met as the proposed contribution appears to be nothing
more than an argument that the absolute priority rule has been satisfied.  *See In re Haskell Dawes, Inc.*, 199 B.R. at
874 (citing *In re Wynnefield Manor Associates, L.P.*, 163 B.R. 53, 58 (Bankr. E.D.Pa. 1993)).

[18] *In re Haskell Dawes, Inc.,* 199 B.R. at 877.

[19] *Id.* at 878.

demonstrate that the capital contribution is reasonably equivalent to the Owners' interest that will be retained.

The fourth prong requires that the contribution be up front and substantial. In *In re Haskell Dawes, Inc.*, the court found that the capital contribution was in the form of money or money's worth and was necessary to fund payments due under the plan. However, the court held that a contribution representing 5.1% of the unsecured creditors' claims was insubstantial.[20] In so holding, the court opined that,

> [i]n determining whether an equity holder's capital contribution is substantial, courts generally consider a combination of two or more of the following factors: the size of the contribution; its relation to the amount of unsecured claims against the estate; its relation to the plan's distribution to unsecured creditors; its relation to the amount of pre-petition claims; its relation to a normal market contribution; and the amount of debt to be discharged.[21]

Here, the Debtor does not specifically address these factors to meet its burden, however, in analyzing these factors independently, the Court finds that the Owners' $8,000.00 contribution represents only a *de minimis* amount of the unsecured claims. Thus, this Court finds that the Debtor has not met the burden of proving that $8,000.00 is a substantial contribution.

Accordingly, the Amended Plan cannot be confirmed based on the factors set forth in *In re Haskell Dawes, Inc.*

---

[20] *Id.* at 876.

[21] *Id.* at 875.

## <u>CONCLUSION</u>

This Court is not prepared to conclude that reorganization is impossible for this Debtor. However, the Court will sustain the McLaughlin Objection insofar as it contends that the Amended Plan is not fair and equitable because equity is retaining its interests while unsecured claims are not being paid in full, as required for confirmation under § 1129(b)(2)(B)(ii). Therefore, the Amended Plan cannot be confirmed. An order will be entered contemporaneously with this Memorandum Opinion.

Dated: August 16, 2017

__/s/ Carlota M. Böhm_____
Carlota M. Böhm
United States Bankruptcy Judge

FILED
8/16/17 4:07 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA